704 F.2d 820
 10 Bankr.Ct.Dec. 693, Bankr. L. Rep. P 69,189
 In the Matter of Mark HUGHES, individually and d/b/a Hughes
Construction Company, and Bobby Mack, individually
and d/b/a Hughes Construction Company, Debtors.
YELLOWHOUSE MACHINERY COMPANY, Plaintiff-Appellant,
v.
Bobby MACK, d/b/a Hughes Construction Company, and Mark
Hughes, d/b/a Hughes Construction Company,
Defendants-Appellees.
 No. 82-1681
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 May 12, 1983.
 Bass & Hobbs, R. Byrn Bass, Jr., Lubbock, Tex., for plaintiff-appellant.
 Sims, Kidd, Hubbert & Wilson, John Sims, Lubbock, Tex., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Texas.
 Before GEE, RANDALL and TATE, Circuit Judges.
 TATE, Circuit Judge:
 
 
 1
 The Yellowhouse Machinery Company, a dealer in construction equipment, appeals from a district court order affirming a bankruptcy court's holding that a $10,000 payment that Yellowhouse received from a customer on the eve of bankruptcy was a voidable preference, although (1) it was the customer itself, in the capacity of debtor-in-possession, and not a trustee, that was seeking to avoid the payment, and (2) it was the customer itself that, by selling financed equipment without permission (and without Yellowhouse's knowledge) a year earlier, had largely caused the customer's secured debt to become sufficiently undersecured to make a payment of $10,000 voidable. Finding no merit to the plaintiff's sole argument on appeal, that an equitable exception ought to be made, in light of the circumstances of the present case, to the Bankruptcy Code's grant of the trustee's avoiding powers to debtors-in-possession, we affirm.
 
 
 2
 * In March 1978, Yellowhouse sold Mark Hughes and Bobby Mack, jointly doing business as Hughes Construction Company ("Hughes" or "the debtors"), a Caterpillar model 12E Motor Grader. A portion of the purchase price was to be paid in installments, and Yellowhouse retained and perfected a security interest in the equipment to secure the debt. In July 1980, a second motor grader (this a Caterpillar model 14D) was sold by Yellowhouse to Hughes, and a new note in the amount of $34,715.88, secured by both graders, was given to Yellowhouse, which in turn, transferred same with recourse to John Deere Industrial Equipment Company. Approximately six months later, apparently without the knowledge or consent of either Yellowhouse or John Deere, the debtors sold the first grader. The proceeds of the sale were not applied to the note, but seem instead to have been used by the debtors in the conduct of their business.
 
 
 3
 In December 1981, Hughes defaulted in its payments on the note, the balance due was accelerated, and the note was repurchased by Yellowhouse pursuant to its recourse agreement with John Deere, in March 1982. A balance of $17,328.63 remained outstanding on the note. Learning that Hughes had sold one of the graders, Yellowhouse repossessed the other (estimated to have a fair market value of $7500), and on March 15, 1982, obtained from Hughes a $10,000 cash payment that was applied to the note.
 
 
 4
 On April 13, 1982, the debtors, individually and as Hughes Construction Company, filed petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Secs. 1101 et seq., and continued to operate the business and administer the debtors' estate as debtors-in-possession, 11 U.S.C. Secs. 1101(1), 1107. Yellowhouse filed a complaint to modify the stay of all proceedings seeking leave to foreclose on the motor grader it repossessed and to retain the $10,000 obtained from the debtors, while the debtors-in-possession filed a cross complaint to avoid the payment as a preferential payment made within 90 days of filing that enabled Yellowhouse to obtain a greater proportion of its claim than other creditors of its class. 11 U.S.C. Sec. 547. Following trial on these issues, the bankruptcy court held that the $10,000 payment was an avoidable preference, and on review, the district court affirmed. On appeal, Yellowhouse solely contends that avoiding the payment will enable the debtors to benefit from their own prior acts of misfeasance--arguing specifically that the note would have been fully collateralized if the first motor grader had not been sold, and that thus any amounts up to the grader's liquidation value received for its sale could not have been avoided as a preference.
 
 II
 
 5
 Yellowhouse does not seriously contest that the elements of a preference, 11 U.S.C. Sec. 547, are here fulfilled, nor that the Act's general grant of trustee's powers to debtors-in-possession, 11 U.S.C. Sec. 1107, includes the trustee's power to avoid preferences. Instead, Yellowhouse argues that the debtors ought not benefit from their own misdeed (which served to deprive Yellowhouse of the secured creditor status it would have otherwise enjoyed in a sum equal to the grader sold by the debtors). Yellowhouse candidly concedes it can find no authority in support of its position, but urges its argument primarily on the basis of general equity principles, and that a bankruptcy court as a court of equity should apply those principles so as to allow it to retain the $10,000.
 
 
 6
 The argument, however, (A) fails to acknowledge the importance of the distinction between a debtor qua debtor and a debtor qua debtor-in-possession; and (B) misconceives the effects of avoiding a preference, which directly accrue to the benefit of other creditors and not to the debtor.
 
 
 7
 A. A debtor-in-possession, in his capacity as such, occupies the shoes of a trustee in every way. 11 U.S.C. Sec. 1107(a); Matter of Triangle Chemicals, Inc., 697 F.2d 1280, 1283-1284 (5th Cir.1983); Matter of Tape City, 677 F.2d 401, 403 (5th Cir.1982); 5 Collier on Bankruptcy, p 1107.02 (15th ed. 1982). As a debtor-in-possession, he both enjoys the rights and must fulfill the duties of a trustee. The debtor's duties in his role as debtor-in-possession is aptly summarized in Matter of E. Paul Kovacs and Co., Inc., 16 B.R. 203, 205 (Bkrtcy.D.Conn.1981):
 
 
 8
 "[T]he debtor, though left in possession by the judge, does not operate [the business] as it did before the filing of the petition, unfettered and without restraint." [Citation omitted]. Rather, "[a] debtor in possession holds its powers in trust for the benefit of creditors. The creditors have the right to require the debtor in possession to exercise those powers for their benefit." [Citation omitted.]
 
 
 9
 Likewise, it is for the benefit of creditors, and not its own benefit, that a debtor-in-possession wields the preference avoiding powers of a trustee:
 
 
 10
 There should be no question but that the debtor, as such, cannot maintain an action to set aside his own transfer as preferential under section 547. In ordinary bankruptcy, the debtor does not become an officer of the court or assume any superior legal status with respect to his former position. Moreover, the doctrine of estoppel would in most cases prevent any successful recovery, even though the suit were commenced. Under 11 U.S.C. Sec. 1107(a), however, a debtor in possession has the powers of a trustee and therefore can sue under section 547 to set aside a preferential transfer.
 
 
 11
 4 Collier on Bankruptcy, supra, p 547.52.
 
 
 12
 B. The nature of the preference avoiding powers granted by section 547 of the Bankruptcy Code is intended to promote the common good of all of an estate's creditors by fostering "the prime bankruptcy policy of equality of distribution among creditors of the debtor." H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 178 (1977) reprinted in 5 U.S.Code Cong. & Admin.News 5787, 6138 (1978); 4 Collier on Bankruptcy, supra, p 547.03.
 
 
 13
 In the present case, Hughes' creditors, not Hughes itself, will enjoy pro rata benefits in the $10,000 disgorged from Yellowhouse. We therefore find little merit in Yellowhouse's argument that the debtors will in some way obtain an inequitable benefit as a result of their own misdeed (at the expense of Yellowhouse, its innocent creditor)--the real contest here is one between Yellowhouse on the one hand, and all of the debtors' unsecured creditors on the other.
 
 Conclusion
 
 14
 Accordingly, we AFFIRM the order of the district court.
 
 
 15
 AFFIRMED.