**In re Richard S. DYBALSKI and Melissa M. Dybalski, Debtors.**

**No. 03–17452–JKC–7A.**

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

Sept. 28, 2004.

Paul D. Gresk, Indianapolis, IN, for Creditor–Objector.

Richard D. Martin, Frankfort, IN, for Debtor.

### ORDER GRANTING TRUSTEE'S MOTION FOR TURNOVER

JAMES K. COACHYS, Bankruptcy Judge.

This matter came before the Court on the Chapter 7 Trustee's Amended Motion for Turnover, wherein the Chapter 7 Trustee argued that the Debtors should be required to turn over funds that were paid from their banking account for checks written pre-petition but honored post-petition. For the reasons stated below, the Court grants the Amended Motion.[1]

### Procedural and Factual History

The Debtors filed a voluntary joint petition on September 17, 2003 (the "Petition Date"). At that time, the Debtors maintained a checking account at Union Federal Bank with a balance of $1,783.80. Following the Petition Date, the bank apparently[2] honored several checks written

---

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).

2. The Trustee did not present documentary evidence regarding the account balance or the checks, and the record does not reflect to whom the checks were paid to or in what

by the Debtors prior to commencing their case (the "Transfers"). On February 25, 2004, Paul D. Gresk, as counsel for the Chapter 7 Trustee (the "Trustee"), filed an Amended Motion for Turnover (the "Amended Motion"), in which he sought turnover of the checking account funds, less the Debtors' combined $200.00 exemption for intangible personal property (the "Funds"). Initially, the Court granted the Trustee's request but later set aside the order, questioning "the manner in which the Trustee ... presented his request [for turnover] and whether he ... sought recovery of the funds from the wrong parties." More specifically, the Court stated: [3]

> Case law suggests that the transfers in this case are avoidable under § 549 of the Code as unauthorized post-petition transfers. *See, e.g., In re Oakwood Markets, Inc.*, 203 F.3d 406 (6th Cir. 2000); *In re Mills*, 176 B.R. 924 (D.Kan. 1994); *In re By–Rite Distributing, Inc.*, 89 B.R. 906 (D.Utah1988); *contra Quinn Wholesale, Inc. v. Northen*, 873 F.2d 77 (4th Cir.1989). Such actions

must be brought by adversary proceedings. *See* Fed.R.Bankr.P. 7001. Furthermore, under § 550(a) of the Code, it appears that the Trustee may recover the funds only from an initial, immediate or mediate transferee, but not from the Debtors.

Per this order, the Court set the matter for an additional hearing for May 3, 2004.

In advance of this hearing, the United States Trustee (the "UST") filed a memorandum in support of the Amended Motion and argued, *inter alia*, that the subject transfers from the Debtors' checking account were avoidable as unauthorized post-petition transfers pursuant to § 549(a) [4] of the Code and could be recovered from the Debtors as entities for whose benefit the transfers were made pursuant to § 550(a). [5] The UST further argued that the transfers could be both avoided and recovered by way of motion by virtue of Fed.R.Bankr.P. 7001(1).

At the Court's May 3rd hearing, the Court heard argument on this case and in several others in which the same issue was presented. The Court took the matter

amount. The Debtors have, however, conceded the facts underlying the Amended Motion.

3. The Debtors did not object to the Trustee's Amended Motion. Given the importance of the issue presented by the Amended Motion, however, the Court decided to raise its concerns notwithstanding the Debtors' acquiescence. "[C]ourts are not required to grant a request for relief simply because the request is unopposed." *In re Franklin*, 210 B.R. 560, 562 (Bankr.N.D.Ill.1997). "The granting of an uncontested motion is not an empty exercise but requires that the court find merit to the motion ...." *Nunez v. Nunez (In re Nunez)*, 196 B.R. 150, 156–57 (9th Cir. BAP 1996) (citation omitted).

4. Section 549(a) provides in relevant part:
   (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and
(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
(B) that is not authorized under this title or by the court.

5. Section 550(a) provides:

Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
(2) any immediate or mediate transferee of such initial transfer.

under advisement and entered an order defining the relevant issues and giving the parties time to file briefs. Soon thereafter, the UST filed a Motion to Expand Issues to be Briefed and Extend Deadline. The Court granted this motion, and both the Trustee and UST filed post-hearing briefs which articulated an additional argument in favor of their position, *i.e.*, that the Funds, or their value, are recoverable from the Debtors pursuant to Code §§ 521(4) and 542(a).

That procedural history brings the Court to its substantive discussion of the issues presented by the Amended Motion.

### *Discussion and Decision*

■ As stated above, the UST and Trustee argue that the Debtors are required to turn over the Funds pursuant to §§ 521(4) and 542(a) of the Code. For the reasons stated below, the Court agrees.

Under § 521(4), a debtor is required to surrender all property of the estate to the trustee, if one has been appointed. Code § 542(a) further provides that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property *or the value of such property*, unless such property is of inconsequential value or benefit to the estate." (Italics added).

In support of their position, the UST and Trustee direct the Court to the Seventh Circuit's opinion in *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith and Cutler, P.A. (In re USA Diversified Products,*

*Inc.),* 100 F.3d 53 (7th Cir.1996). In that case, funds belonging to the Chapter 11 debtor's bankruptcy estate were on deposit with a law firm as of the commencement of the case, but were then transferred to another entity. Affirming the bankruptcy and district courts, the Seventh Circuit held that the firm was liable to the trustee for turnover pursuant to § 542(a). The court emphasized that the firm was required to turn over the funds despite the fact that it no longer had possession of them. "[Section 542(a)] ... requires the delivery of the property *or the value of* the property. Otherwise, upon receiving a demand from the trustee, the possessor of property of the debtor could thwart the demand simply be transferring the property to someone else. That is not what the statute says ...and can't be what it means." *Id.* at 56 (italics in the original) (citations omitted); *see also Boyer v. Davis (In re U.S.A. Diversified Products, Inc.),* 193 B.R. 868, 879 (Bankr.N.D.Ind. 1995) ("[A] turnover defendant's lack of present possession of property of the bankruptcy estate or its proceeds is not a defense to a turnover action under the Bankruptcy Code.").

■ Notwithstanding the fact that the Debtors no longer have possession of most of the Funds, they are ordered to surrender them, or their value, to the Trustee.[6] Furthermore, the Court agrees that while turnover from non-debtor parties must be brought via an adversary proceeding, the Trustee is entitled to proceed against the Debtors via motion pursuant to Fed. R.Bankr.P. 7001(1). That rule states that a proceeding to recover money or property is an adversary proceeding *unless* it is a

---

6. Section 542(a) states that turnover can be asserted against any "entity," other than a custodian (as that term is defined in the Code), in custody, control or possession of estate property. While the provision appears to be primarily used for turnover of estate property held by non-debtor parties, there is nothing to suggest that it cannot be asserted— especially when read in conjunction with § 521(4)—against a debtor.

proceeding to compel the debtor to deliver property to the trustee.[7]

The Court's conclusion is premised on the assumption that the Transfers from the Debtors' checking account occurred post-petition and that the transferred Funds are, therefore, property of the estate. That assumption warrants some discussion.

■ Pursuant to § 541, the commencement of a bankruptcy case creates an estate comprised of all property in which the debtor holds an equitable or legal interest, wherever located and by whomever held. The estate is strictly determined as of the petition date. *See e.g., In re Orso,* 283 F.3d 686, 691 (5th Cir.2002). " 'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property . . . ." 11 U.S.C. § 101(54).

In *Barnhill v. Johnson,* 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992), the United States Supreme Court held that for purposes of preference avoidance under Code § 547(b), a transfer by ordinary check occurs, not on the date that it is presented to the payee, but on the date the drawee bank honors it. In reaching that conclusion, the Court rejected Barnhill's argument that delivery of a check effectuates a "conditional" transfer within the meaning of § 101(54):

> We acknowledge that § 101(54) adopts an expansive definition of transfer . . . . There is thus some force in [Barnhill's] claim that he did, in fact, gain something when he received the check. But at most, what [he] gained was a chose in action against the debtor. Such a right, however, cannot fairly be characterized

as a conditional right to "property . . . or an interest in property," § 101(54), where the property in this case is the account maintained by the drawee bank. For as noted above, until the moment of honor the debtor retains full control over disposition of the account and the account remains subject to a variety of actions by third parties. To treat [ Barnhill's] nebulous right to bring suit as a "conditional transfer" of the property would accomplish a near-limitless expansion of the term "conditional."

*Id.* at 401, 112 S.Ct. at 1391.

While *Barnhill* dealt specifically with § 547(b)'s preference period, its "date of honor" rule logically and necessarily applies with equal force here. Thus, the Court must conclude that the Transfers from the Debtors' checking account occurred post-petition. It must further conclude that the Funds are property of the estate recoverable from the Debtors pursuant to §§ 521(4) and 542(a).

The result in this case, at least on its face, seems rather unfortunate. The Trustee has a choice of remedies here. He could recover the transferred Funds from the creditors that received them pursuant to Code §§ 549(a) and 550. Instead, the Trustee has chosen to proceed against the Debtors—presumably because it is more cost-effective. The Court does not fault him for this or suggest that he is not entitled to do so. Nevertheless, the Code is primarily intended to give debtors a "fresh start" and to equalize distribution among like creditors. The Court does not believe that either of these goals is well served here. The Debtors, who may not be in a position to turn over the Funds, must essentially pay the same "bill" twice, with perhaps only a marginal benefit to

---

7. Based on its conclusion, the Court declines to address the UST's argument that a trustee can recover a transfer avoided under § 549(a) from the Debtors as an "entity for whose benefit such transfer was made." *See* 11 U.S.C. § 550(a)(1).

the estate, while the creditors who received the Funds are able to retain them.

The Court recognizes, however, that the Debtors are likely in a no-win situation. It is possible that some (or most) of the Funds went to the Debtors' mortgage and/or automobile lenders. If these lenders are forced to turn over the Funds to the Trustee, the Debtors will be in default under their loan agreements and will either have to repay the money or face foreclosure or repossession. This is certainly not a favorable result either.

 In the end, it is a debtor's responsibility to make sure that any checks written on the eve of bankruptcy have cleared before the case is filed. While this precaution will not insulate creditors from preference actions, it will shield both creditors and debtors alike from actions to recover estate property under Code §§ 542(a) and 549. Debtors may also want to consider whether using cashier's checks, rather than ordinary checks, to pay bills on the eve of bankruptcy offers any benefit under applicable state and federal law. *See, e.g., Hall–Mark Electronics Corp. v. Sims (In re Lee)*, 179 B.R. 149, 159 (9th Cir. BAP 1995) (under California law, cashier's check is accepted upon issuance).

Based on the foregoing, the Debtors are ordered to surrender the Funds or their value to the Trustee within 60 days.